IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NANCY KOENIG, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 8:04CV486 ) ) |
| CBIZ BENEFITS & INSURANCE SERVICES, INC., a Missouri corporation, | ) ) MEMORANDUM AND ORDER ) ) ) |
| Defendant/Third Party Plaintiff, | ) ) ) |
| v. | ) ) ) |
| GARVEY & ASSOCIATES, INC., | ) ) |
| Third Party Defendant. | ) ) ) |

This matter is before the court on motions for summary judgment filed by the plaintiff Nancy Koenig ("Koenig") (Filing No. 83, Filing No. 137), defendant CBIZ Benefits & Insurance Services, Inc. ("CBIZ") (Filing No.114), and third party defendant Garvey & Associates, Inc. ("G&A") (Filing No. 88). Koenig originally filed this action against CBIZ in the District Court of Douglas County alleging claims for (1) declaratory judgment requesting injunctive relief and for an order finding and decreeing that the noncompetitive provisions of her employment agreement are void and unenforceable, and (2) for breach of contract, alleging CBIZ did not have proper cause to terminate Koenig's employment with CBIZ. Filing No. 1-1, Ex. A at 6-9.

CBIZ filed a motion to dismiss, or, in the alternative, motion for summary judgment in state court. Douglas County District Court Judge J. Patrick Mullen granted Koenig's motion for a temporary injunction and temporarily enjoined and restrained CBIZ from enforcing the restrictive covenant in the employment agreement. The state court also determined that neither the controlling law provision nor the forum selection clause of the Agreement, which both provide for Missouri law, is enforceable under Nebraska law. Accordingly, the court denied CBIZ's motion to dismiss and alternatively, CBIZ's motion for summary judgment.

CBIZ then removed the action to this court and filed a second amended answer and counterclaim. In the second amended counterclaim, CBIZ seeks declaratory judgment on Koenig's claims (Count I), breach of contract (Count II), intentional interference with a business relationship (Count III), and misappropriation of trade secrets and confidential proprietary information (Count IV). Filing No. 5; Filing No. 119. CBIZ further alleges claims against Koenig's current employer, third party defendant G&A, arguing G&A is liable for all or part of Koenig's claims against CBIZ. CBIZ alleges claims for misappropriation of trade secrets and confidential and propriety information (Count I), tortious interference with existing and prospective contractual and business relationships (Count II), unfair competition (Count III), unjust enrichment (Count IV), intentional interference with contract (Count V), and seeks an accounting (Count VI). Filing No. 35. G&A filed an answer and counterclaim alleging claims for tortious interference with prospective business relationships. Filing No. 42.

Koenig seeks an order granting her partial summary judgment on her first cause of action for declaratory judgment (Count I) and on CBIZ's counterclaim (Counts I-IV). Filing

2

No. 83; Filing No. 137. G&A seeks an order granting it summary judgment on CBIZ's claims (Counts I through VI). Filing No. 88. CBIZ seeks an order granting it summary judgment on Koenig's breach of contract claim (Count II). Filing No. 114.

**BACKGROUND**

CBIZ, a national insurance services organization providing consultation and full service administration of employee benefits, is a Missouri corporation with a principal place of business in Kansas City, Missouri. Filing No. 115. Koenig began working for CBIZ on January 16, 2001, as a sales associate/producer in CBIZ's Omaha, Nebraska, business unit. Filing No. 1-1, Ex. A at 6. Koenig and CBIZ entered into an Employment Agreement dated January 11, 2002, and an amendment to the Employment Agreement (collectively, the "Agreement") dated March 1, 2004. Filing No. 1-1, Ex. A at 10-19. The Agreement contained the following Non-Solicitation clause:

> 8. <u>Non-Solicitation</u>
>
> (A)   As consideration for the services to be performed by KOENIG and for any and all compensation, of any and all types, paid to KOENIG, KOENIG expressly covenants and agrees that she shall not do any of the following:
>
>> (1) while employed by CBIZ and for a period of two (2) years thereafter, directly or indirectly, engage in or be retained by, or consult with, any person, firm, corporation or other entity which during such period engages in any activity which directly or indirectly involves the servicing or sale of employee benefit and insurance products and services programs by or to any of CBIZ's clients and to any of its prospects which are currently in the process of becoming CBIZ clients (namely, those prospective clients who within the immediately preceding twenty-four (24) months have been contacted by any employee or associate of CBIZ) ("Protected Business").
>>
>> (2) while employed by CBIZ and for a period of two (2) years thereafter, solicit or induce, or attempt to solicit or induce, any of CBIZ's clients to cancel, lapse or fail to renew their policies and/or

> contracts with any existing carrier or third party payor and/or change their broker of record letter with CBIZ, any affiliate or any designee;
>
> (3) while employed by CBIZ and for a period of two (2) years thereafter, interfere with, disrupt or attempt to disrupt relationships, contractual or otherwise, between CBIZ and any of its clients, prospects, and vendors;
>
> (4) while employed by CBIZ and for a period of one (1) year thereafter, interfere, or attempt to interfere, with the recruiting, hiring and continuing employment of CBIZ's employees;
>
> (5) for a period of two (2) years after termination of this Agreement, engage in or perform employee benefit and insurance product services to or for any Protected Business of CBIZ.
>  . . .
>
> (D)   . . . In the event a Court deems a geographic limitation necessary, reasonable or desirable component hereof (although the parties hereto have reasonably attempted to restrict the scope of the covenants primarily to personnel, clients and confidential information), the parties agree that each of the restrictions set forth in this Section 8 shall apply within a two hundred fifty (250) mile radius of CBIZ's business unit located in Omaha, Nebraska or as otherwise determined by the Court.

Filing No. 1-1, Ex. A at 11-13. The Agreement also contained a Confidentiality clause, an Employment and Termination clause, and a provision concerning Governing Law:

> 9. <u>Confidentiality</u>: The parties recognize that KOENIG, because of her position and the training and disclosures made by CBIZ, will become highly familiar with respect to the trade secrets of CBIZ, including but not limited to, its methods and procedures for employee benefit administration as well as a variety of other client information, business and financial information of a confidential and proprietary nature, and as a consequence thereof, KOENIG acknowledges and agrees as follows:
>
> (A)   During the term of her employment and for a period of two (2) years thereafter, she shall not, directly or indirectly, use or disclose any private or confidential information of CBIZ, including, but not limited to, its trade secrets, to any unauthorized person, firm or corporation without the prior written consent of CBIZ;

4

>    (B)   That all processes, methods and procedures of CBIZ (whether developed or improved upon prior to or during the term of her employment with CBIZ) are the property of CBIZ, that CBIZ is possessed with full ownership interest and title to such property.
>
> . . .
>
>    1. <u>Employment</u>: KOENIG hereby accepts CBIZ's offer of continued employment as a Sales Associate in CBIZ's business unit located in Omaha, Nebraska. . . . KOENIG's employment as a Sales Associate with CBIZ shall continue unless terminated without cause by either party upon thirty (30) days written notice to the other party or terminated immediately for cause as hereinafter provided for in Section 13.
>
> . . .
>
>    13. <u>Termination</u>: Notwithstanding any provision contained herein to the contrary, CBIZ reserves the right to terminate KOENIG's employment pursuant to Section 1 herein immediately if CBIZ determines that KOENIG has: acted in a grossly negligent manner in the performance of her duties and responsibilities; committed a criminal or unethical act which may affect the good name of CBIZ; violated the non-solicitation and/or the confidentiality restrictions imposed on her as set forth in Sections 8 and 9 herein; failed to obtain or maintain the necessary professional licenses or credentials; failed to meet agreed upon production objectives; or, breached any other material term of this Agreement. Termination pursuant to this Section immediately terminates CBIZ's obligations to make any additional compensation payments to KOENIG.
>
> . . .
>
>    23. <u>Governing Law</u>: This Agreement shall be governed by the laws of the State of Missouri without regard to principles of conflict of laws. Both parties to this Agreement hereby irrevocably submit to the jurisdiction of the courts of the state of Missouri, with venue in Jackson County, over any dispute arising out of this Agreement and agree that all claims in respect of such dispute shall be determined in such court.

Filing No. 1-1, Ex. A at ¶¶ 8, 9, 13, 23.

On April 23, 2004, CBIZ terminated Koenig's employment because Koenig allegedly demeaned her coworkers, offended outside vendors, and refused to follow CBIZ's rules. Filing No. 1-1, Ex. A at 6. In May 2004, Koenig began working for G&A, a Nebraska

corporation with a principal place of business in Omaha, Nebraska.  Filing No. 35.  G&A, an insurance brokerage service, is a direct competitor of CBIZ in Omaha, Nebraska.  *See* Filing Nos. 35, 42.  On September 21, 2004, Douglas County District Court Judge J. Patrick Mullen granted Koenig's motion for temporary injunctive relief, and restrained CBIZ from enforcing the restrictive covenant in Koenig's employment agreement.  Filing No. 1-1, Ex. C at 25-26.  It is undisputed that following the order of temporary injunction, Koenig contacted clients with whom she had contact while previously employed at CBIZ.  Filing Nos. 84, 104.

CBIZ alleges that Koenig supplied G&A with a list of CBIZ clients, the amount of each account generated, the name of the client's outside carrier, and Koenig's estimate of her chances of successfully soliciting these clients.  Filing No. 104.  CBIZ further alleges that Koenig solicited CBIZ clients before and after the court issued the temporary injunction order.  *Id.* at ¶ 9.  Koenig contends that she did not misappropriate any trade secrets or proprietary confidential information.  Filing No. 123 at ¶ 18.  Koenig maintains she produced and generated a client list from memory, based on her experience and contacts in the insurance industry.  Filing No. 108; *see also* Dep. Ex. 49.  Koenig claims that several former CBIZ clients hired Koenig as their broker of record because they had been with Koenig prior to her employment with CBIZ.  Filing No. 84 at ¶ 13.

**STANDARD OF REVIEW**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322,

1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

The burden of establishing the non-existence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational, Inc.*, 825 F.2d 167, 174 (8th Cir. 1987).

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Facts are viewed in the light most favorable to the non-moving party, "but in order to defeat a motion for summary judgement, the non-movant party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v. West,* 148 F.3d

979, 981 (8th Cir. 1998). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

**DISCUSSION**

**I.      Choice of Law**

CBIZ maintains that pursuant to the terms of the Agreement, Missouri law, rather than Nebraska law, governs. CBIZ argues that the Douglas County District Court erred when it failed to enforce the choice-of-law provision. CBIZ waived enforcement of the forum-selection clause of the Agreement which provides for application of Missouri law regardless of where the case is tried, but CBIZ requests that this court enforce the choice-of-law provision. Filing No. 104.

A district court sitting in diversity jurisdiction applies the conflict of law rules for the state in which it sits. *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001). Nebraska follows the Restatement (Second) of Conflict of Laws. *Id.* Restatement § 187 provides that the law of the state chosen by the parties will be applied unless to do so "would be contrary to the fundamental policy of the state which has a materially greater interest than the chosen state and the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) of Conflict of Laws § 187(2)(b) (1971).

The Douglas County District Court determined the parties negotiated and entered into the Agreement in Omaha, Nebraska, and Koenig provided services in Nebraska. Filing 1-1, Ex. D at 31. Furthermore, the court noted that 98% of Koenig's clients were

8

based in Omaha, Nebraska, and Koenig had no clients or customers located in Missouri. *Id.* The court further determined that Nebraska law and Missouri law differ regarding enforcement of restrictive covenants within an employment agreement. *Id.* The court stated "application of Missouri law to uphold and enforce the agreement would be contrary to the fundamental policy of the state of Nebraska where the restrictive covenants of the agreement may be too broad to be enforced under Nebraska law and where agreement cannot blue penciled [sic] solely for the purpose of making it enforceable." *Id.*

These findings by the Douglas County District Court are arguably the law of the case. However, independent of the Douglas County District Court's findings, this court finds Nebraska law governs. In a similar case, the United States Court of Appeals for the Eighth Circuit upheld application of Nebraska law and held that Nebraska, rather than Ohio, had a greater material interest in the validity and enforceability of noncompete agreements. *DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 897 (8th Cir. 2006). The Eighth Circuit noted that Nebraska and Ohio courts apply "materially different approaches to the reformation of unreasonable noncompete agreements." *Id.* at 897. If a Nebraska court determines a noncompete agreement is unreasonable, the court will not alter or strike the noncompete agreement to make it enforceable. *Id. See H & R Block Tax Serv., Inc. v. Circle A Enters., Inc.*, 693 N.W.2d 548, 552 (Neb. 2005). Unlike the Nebraska courts' approach, Ohio courts are permitted to reform unreasonable or overly broad noncompete agreements to make them reasonable. *Raimonde v. Van Vlerah*, 325 N.E.2d 544, 547 (Ohio 1975).

Similar to the Ohio courts, Missouri courts maintain that "an unreasonable restriction against competition in a contract may be modified and enforced to the extent that it is

9

reasonable, regardless of the covenant's form of wording." *Mid-States Paint & Chemical Co. v. Herr*, 746 S.W.2d 613, 616 (Mo. Ct. App. 1988). In the present case, the Douglas County District Court correctly recognized that because Nebraska courts have explicitly rejected judicial reformation of noncompete agreements, application of Missouri law would violate a fundamental policy of Nebraska law. *See Castillo*, 435 F.3d at 897. Accordingly, Nebraska law governs because Nebraska has a greater material interest in Koenig's Agreement.

II. **Enforceability of the Noncompetitive Provisions and Breach of Contract**
(Plaintiff's Motion for Partial Summary Judgment regarding her First Cause of Action for declaratory judgment and CBIZ's First Claim for Relief for declaratory judgment (Filing No. 83; Filing No. 1-1 Ex. A; Filing No. 5, 119))

(Plaintiff's Motion for Partial Summary Judgment regarding CBIZ's Second Claim for Relief (Filing No. 83; Filing No. 5, 119))

In her motion for partial summary judgment, Koenig asked this court to find that no genuine issues of material fact exist regarding the enforceability of the anti-competitive restrictions and covenants in the Agreement. Filing No. 83 at ¶ 2. Koenig maintains there are no genuine issues of material fact that the scope of the non-solicitation clause is greater than reasonably necessary to protect CBIZ's legitimate interests, and, thus, is unenforceable. Filing No. 84 at 8. CBIZ contends that the non-solicitation clause is enforceable under Nebraska law because the Agreement is no greater than necessary to protect CBIZ's legitimate interests. Filing No. 104 at 20.

Nebraska law provides that a noncompete agreement is valid if it is "(1) not injurious to the public, (2) not greater than is reasonably necessary to protect the employer in some legitimate interest, and (3) not unduly harsh and oppressive on the employee." *DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 897 (Neb. 2006) (*quoting Prof'l Bus. Servs.*

10

*Co. v. Rosno*, 680 N.W.2d 176, 184 (Neb. 2004)). "An employer has a legitimate business interest in protection against a former employee's competition by improper and unfair means, but is not entitled to protection against ordinary competition from a former employee." *Castillo*, 435 F.3d 892 at 897 (*quoting Rosno*, 680 N.W.2d at 185). A noncompete agreement is only valid "if it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and has personal contact." *Polly v. Ray D. Hilderman & Co.*, 407 N.W.2d 751, 756 (Neb. 1987). Nebraska law reflects a consistent refusal to alter or strike the language of a noncompete provision in order to make it enforceable. *H & R Block Tax Servs., Inc. v. CircleA Enter., Inc.*, 269 Neb. 411, 416, 693 N.W.2d 548, 553 (Neb. 2005). "Thus, if any portion of the covenant [not to compete] is invalid, the remainder of the covenant is likewise invalid and unenforceable." *Id*.

The Nebraska Supreme Court determined a noncompete agreement was overly broad because it restricted the former employee from soliciting or selling to individuals and businesses that were not customers of the employer. *Mertz v. Pharmacists Mut. Ins. Co.*, 625 N.W.2d 197, 205 (Neb. 2001). The court noted the agreement failed to limit its terms to those clients with whom the employee actually did business or had personal contact. *Id*. The court reasoned the agreement failed to limit itself to the employer's existing client base in Nebraska, and, therefore, the covenant was broader than reasonably necessary. *Id*. *See also Vlasin v. Len Johnson & Co., Inc.*, 455 N.W.2d 772, 776 (Neb. 1990) (finding a noncompete covenant overly broad and unreasonable where solicitation was not restricted to the former employer's clients with whom the former employee actually did business and had personal contact and prohibited the employee from entering into

11

insurance business within a fifty mile radius); *Moore v. Eggers Consulting Co.*, 562 N.W.2d 534, 539 (Neb. 1997) (holding noncompete agreement prohibited the employee from soliciting or working with clients the employee had never met, the scope of the noncompete agreement was greater than reasonably necessary to protect the employer's interests and was, therefore, unenforceable and unreasonable); *Whitten v. Malcolm*, 541 N.W.2d 45, 48 (Neb. 1995) (holding noncompete agreement was overly broad because it prohibited a dentist from practicing within a twenty-five mile radius for one year and the noncompete agreement was not limited to clients with whom the dentist actually did business and had personal contact).

In this case, the non-solicitation provision bars Koenig from, directly or indirectly, being involved with any company in competition with CBIZ for a period of two years, and prohibits Koenig from contacting customers or prospective CBIZ customers.[1]  The Agreement effectively contains a non-solicitation clause with two different restrictions. First, subparagraph A (1-4) includes a restriction on Koenig from soliciting or doing business with CBIZ customers while Koenig was employed by CBIZ.  Filing No. 1-1, Ex. A at 11-12.  Second, subparagraph A (1-5) further prohibits Koenig from soliciting CBIZ clients following termination.  *Id.*  The non-solicitation provision applies to a two hundred fifty mile radius of CBIZ's business unit located in Omaha, Nebraska.  Filing No. 1-1, Ex. A, ¶ 8.  CBIZ has proposed no rationale for such a broad geographical limitation where 98% of Koenig's clients are based in Omaha, Nebraska, and Koenig had no clients or

---

[1]Prospective customers are defined in the non-solicitation clause as those clients contacted by any employee or associate of CBIZ within the immediately preceding twenty-four months.  Filing No. 1-1, Ex. A, ¶ 8.

customers located in Missouri. Filing 1-1, Ex. D at 31. *See Moore v. Eggers Consulting Co.*, 562 N.W.2d 534, 540 (Neb. 1997). If enforced, the breadth of the noncompete agreement would effectively bar Koenig from employment in the insurance industry in an extensive geographical region for a period of two years.

CBIZ contends Koenig violated both restrictions by soliciting clients both before and after the Douglas County District Court issued the temporary injunction. Filing No. 86, Synder Dep. 78:20-79:5; Filing No. 105, Snyder Corp. Dep. 30:5-11. Koenig maintains no evidence exists that she solicited any CBIZ customers in the time period following her termination and prior to the Douglas County District Court's issuance of the temporary injunction. Filing No. 86, Attachment 1-Koenig Aff. ¶¶ 12-13.

Although CBIZ has a legitimate interest in protecting its business and maintaining goodwill with its customers, the court finds that under Nebraska law, the non-solicitation agreement is greater than reasonably necessary to protect CBIZ's interests. The non-solicitation agreement is unreasonable because of the broad geographical restraint and because it prohibits Koenig from contacting customers she never worked with and with whom she has never met. This court will not enforce an overly broad noncompete agreement. Therefore, Koenig is entitled to partial summary judgment and the court finds the non-solicitation provision of her Agreement void and unenforceable. Because the non-solicitation provision of the Agreement is unreasonable and unenforceable, any claim for damages allegedly arising from Koenig's breach of the unenforceable provisions must be denied.

**III.     Interference With Business Relationships**

(Plaintiff's Motion for Partial Summary Judgment regarding CBIZ's Third Claim for Relief for Intentional Interference with a Business Relationship (Filing No. 83; Filing No. 5, 119); Third Party Defendant's Motion for Partial Summary Judgment on Count II for Tortious Interference with Existing and Prospective Contractual and Business Relationships (Filing No. 88; Filing No. 35); Third Party Defendant's Motion for Partial Summary Judgment on Count V for Intentional Interference with Contract (Filing No. 88; Filing No. 35))

CBIZ maintains that Koenig enticed and solicited CBIZ clients and has unlawfully interfered with existing and prospective contractual and business relationships. Accordingly, CBIZ alleges that G&A is vicariously liable for Koenig's actions. Filing No. 35. G&A and Koenig maintain that no solicitation of any former CBIZ account occurred prior to the issuance of the temporary injunction. Filing No. 42.

The Nebraska Supreme Court has indicated that the necessary elements of tortious interference with a business relationship are (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. *Macke v. Pierce,* 661 N.W.2d 313, 317 (Neb. 2003). The court has also indicated "that one of the basic elements of tortious interference with a business relationship requires an intentional act which induces or causes a breach or termination of the relationship." *Pettit v. Paxton*, 583 N.W.2d 604, 609 (Neb. 1998). The Restatement (Second) of Torts § 766 (1979), provides that : "[o]ne who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third

14

person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."

Here, the non-solicitation provision of the Agreement is unreasonable and unenforceable, and any claim for damages allegedly arising from Koenig's breach of the unenforceable provisions must be denied. G&A is similarly awarded summary judgment because absent an enforceable non-solicitation provision, G&A could not induce Koenig to engage in behavior that would constitute an alleged breach of Koenig's Agreement with CBIZ.

**IV.  Misappropriation of Trade Secrets and Confidential Information**
>(Plaintiff's Motion for Partial Summary Judgment regarding CBIZ's Fourth Claim for Misappropriation of Trade Secrets and Confidential Proprietary Information (Filing No. 137; Filing No. 119); Third Party Defendant's Motion for Partial Summary Judgment on Count I for Misappropriation of Trade Secrets and Confidential and Proprietary Information (Filing No. 88; Filing No. 35))
>
>(Third Party Defendant's Motion for Partial Summary Judgment on Count III, IV, and VI for Unfair Competition, Unjust Enrichment, and Accounting)

Separate from the non-solicitation provision, the confidentiality provision in the Agreement provides that during Koenig's employment and for two years following her employment, Koenig should not use or disclose any private or confidential CBIZ information including trade secrets. Filing No. 1-1, Ex. A at ¶ 9. CBIZ argues that Koenig misappropriated profit and margin information, client contact lists, and client service requirements. Filing No. 35, ¶ 26. CBIZ contends that Koenig supplied G&A with a client list including an estimation of the strength of her relationship with each client, the amount of commissions earned from each account, the name of the outside carrier, and the

number of people each client employed. Filing No. 152. Koenig claims she generated this client list and information from memory and experience in the insurance industry. Filing No. 138, ¶ 8. CBIZ asserts that this information could only be obtained by access to CBIZ's secured Internet sites. Filing No. 152, ¶ 11. Furthermore, CBIZ claims Koenig obtained trade secret information when she called an employee at CBIZ and asked the employee to reproduce a confidential CBIZ client file. Filing No. 86, Koenig Dep. 13:20-17:14. States that generally prohibit post-employment noncompetition agreements do allow and enforce agreements for the non-disclosure of trade secrets and confidential information. John Dwight Ingram, *Covenants Not to Compete*, 36 Akron L. Rev. 49, 66 (2002).

Whether G&A participated in Koenig's alleged misappropriation of trade secrets and proprietary information remains unclear. Accordingly, the court finds that genuine issues of material fact exist and summary judgment is denied. In addition, because the court has concluded that factual disputes exist, the motion for summary judgment to dismiss the claims of unjust enrichment, unfair competition, and for an accounting as to the misappropriation of secrets and proprietary information shall therefore be denied.

**V.  Breach of Contract**
(CBIZ Benefits & Insurance Services, Inc.'s Motion for Summary Judgment regarding Plaintiff's Second Cause of Action for breach of contract (Filing No. 114; Filing No. 1-1))

In Nebraska, an employee asserting a breach of employment contract case must initially prove the existence of an employment contract, its terms and his or her compliance with those terms until termination, the employer's breach, and damages. *Barks v. Cosgriff*

16

*Co.*, 529 N.W.2d 749, 754 (Neb. 1995). CBIZ terminated Koenig because Koenig allegedly exhibited serious behavioral issues with staff, clients, and customers. Filing No. 86, Snyder Dep. 16:14-17:15; Snyder Dep. 86:8-24; Auster Dep. 33:6-22. CBIZ provided Koenig with 30 days' severance upon her termination. Koenig maintains that CBIZ's justifications for terminating her employment do not comport with the requirements of Section 13. Filing No. 127. Section 13 provides that Koenig may be terminated for breach of "any other material term of this Agreement." In his deposition, Steve Snyder, president of CBIZ's Omaha, Nebraska, business unit, was unable to identify under which part of Section 13 Koenig was fired. Regardless, pursuant to Section 1 of the Agreement, an at-will provision of the contract, CBIZ could terminate Koenig's employment without cause upon 30 days' written notice. Furthermore, because CBIZ paid Koenig 30 days' severance after terminating her employment, and because she obtained a new position with G&A during that 30-day period, Koenig did not suffer any damages. Accordingly, CBIZ was within its rights to terminate Koenig. Summary judgment is appropriate where no genuine issue of material fact exists and accordingly, CBIZ is entitled to judgment as a matter of law.

ACCORDINGLY, IT IS HEREBY ORDERED that:

1. Koenig's motion for partial summary judgment (Filing No. 83) is granted. CBIZ's claims for breach of contract and intentional interference with business relationships are dismissed. The covenant not to compete is unenforceable and judgment is entered in favor of Koenig and against CBIZ on opposing claims for injunctive relief.

2. Koenig's motion for partial summary judgment (Filing No. 137) and G&A's motion for summary judgment (Filing No. 88) on CBIZ's claim for misappropriation of trade secrets and confidential information are denied.

3. G&A's motion for partial summary judgment (Filing No. 88) is granted in part and denied in part. The motion is granted with respect to CBIZ's claims for tortious interference with business relationships and contract. CBIZ's claims for misappropriation of trade secrets, unfair competition, unjust enrichment, and an accounting are not dismissed.

4. CBIZ's motion for summary judgment (Filing No. 114) is granted, and Koenig's claim for breach of contract is dismissed.

5. CBIZ's claims for misappropriation of trade secrets and confidential information against Koenig and G&A (Filing No. 119; Filing No. 35), and CBIZ's claims for unfair competition, unjust enrichment, and for an accounting, remain issues for determination at trial.

DATED this 10th day of March, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge